IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

OCTAVIUS SETTLES,                    )
                                     )
                    Petitioner       )
                                     )
        vs.                          )        Civil Action No. 07-812
                                     )        Chief Judge Donetta W. Ambrose/
MARILYN BROOKS; DISTRICT             )        Magistrate Judge Amy Reynolds Hay
ATTORNEY OF ALLEGHENY COUNTY;)
PA STATE ATTORNEY GENERAL,           )
                                     )
                    Respondents      )

REPORT AND RECOMMENDATION

I.      RECOMMENDATION

        It is recommended that the petition for writ of habeas corpus, filed pursuant to 28 U.S.C.

§ 2254, be denied and that a certificate of appealability also be denied.

II.     REPORT

        Octavius Settles ("Petitioner"), a state prisoner, was convicted by a jury of rape, statutory

sexual assault, involuntary deviate sexual intercourse, indecent assault, corruption of minors and

simple assault and terroristic threats, in connection with the victimization of his young niece,

who, at the time of trial, was eleven years old and who, at the time of the victimization, was nine

to ten years old.  Petitioner has filed a federal habeas petition pursuant to Section 2254, attacking

his convictions.  Because the issues are meritless, the petition should be denied.

        **A.      Relevant Procedural History**

        The facts relevant to the crimes were recounted by the Superior Court as follows:

                The victim, Latavia Michael, testified that between 1998 and 1999, Settles
        would periodically enter her bedroom.  The victim, who was nine or ten years old
        at the time was Settles' niece.  She testified that Settles, a paraplegic, would lift
        himself from his wheelchair and remove her clothing as well as his own. Settles
        would then rub a substance similar to Vaseline on the victim's buttocks and grind

his penis between her buttock cheeks to the point that it would cause her pain.  On other occasions, Settles would grind his penis against her vagina to the point that it would cause her pain.  During the same period, Settles physically assaulted the victim and threatened her with a knife, saying that he would kill her if she told anyone about the incidents.  At first, the victim reported the incidents to her mother [who was apparently the sister of Petitioner], but her mother did not believe her.  Eventually, the victim told other family members about the incidents.  The police were called and Settles was arrested.

Dkt. [14-10] at 44 to 45.  At Petitioner's trial, the Commonwealth called as its expert witness, Dr. Holly Davis.  Dr. Holly Davis testified, "I can tell you that beyond a shadow of a reasonable doubt this child's hymen was breached." (TT[1] 273).  She continued, "[i]t was breached, and in the process, damaged.  [LaTavia] has posterior findings of healed injuries that are due to penetration, that would not be accidental.  They are not consistent with the kinds of healed injuries we would see following accidental trauma."  (TT 274, 255-256, 268).  Dr. Davis based these conclusions on the fact that "instead of the usual thin, rather translucent [hymenal] membrane with a sharp edge," Latavia had a "thickening of the membrane from 4:00 to 8:00 o'clock."  (TT 254).  The posterior margin of Latavia's hymen between 4 and 8 o'clock "was irregular, and there was more tissue between the 4:00 and 6:00 o'clock positions than between 6:00 and 8:00 o'clock.  And normally those would have exactly the same amount of tissue."  (TT 254).  The tissue where the hymen attaches to the labia minora was "less than 5 millimeters of width, which is a little bit under what [one] would normally expect."  (TT 255).  Doctors also found a "notch," or irregularity on what should be a smooth edge, on Latavia's external genitalia "which represents a loss of tissue, or a gap in the tissue, in the 7:00 o'clock position."  (TT 255).

    In addition, at the trial, several Commonwealth witnesses including Danielle Green, who at the time of trial was 8 years old and who apparently was LaTavia's half sister, testified that she

---

[1] "TT" refers to the "Trial Transcript."

saw LaTavia and Petitioner sleeping in the same bed. (TT 183 - 189). Dominique Dobbins, apparently, another half brother of LaTavia, who was ten at the time of trial, (TT. 161 ) testified that he saw Petitioner and Latavia doing "disgusting things" and seeing them in bed together moving on the bed. (TT. 161-65). Ebony Griffin, who was twenty at the time of trial, and was a baby sitter for LaTavia's family, testified that she walked in the home to find Petitioner naked on a bed with LaTavia sitting at the other end of the bed. (TT. 201).

At the trial, Petitioner took the stand and testified on in his own behalf. The jury, apparently discrediting Petitioner's version of the events, and crediting the Commonwealth's witnesses, convicted Petitioner of all of the crimes charged. After a remand from the Superior Court for resentencing, Petitioner was sentenced to an aggregate of 15 years and 8 months to 30 years and 6 months.

At the time when Petitioner was initially sentenced before the remand for resentencing, Petitioner entered into a plea agreement with the Commonwealth at CC No. 199914296, which was severed from the charges involving LaTavia and which involved a charge of a single count of Indecent Assault, a single count of Corruption of Minors and a single count of Furnishing Liquor to Minors perpetrated against a different minor. Dkt. [4] at 3 n.1. Specifically, the Commonwealth was prepared to present evidence of the crimes as follows:

> had this case proceeded to trial the Commonwealth would have called Detective Goodwin, Officers Kane and Carlton of the Pittsburgh Police , as well as [the minor victim]. Her date of birth is December 30, 1985. Briefly, the testimony would be that [the minor victim] knew the defendant as a neighbor. They met up in a park and he took her in his automobile and they stopped and he bought her beer. They both drank the beer in Homewood, and then drove to the church parking lot where they did drink the beer again. Mr. Settles then attempted to have sexual contact with the victim. He kissed her on the lips, and touched her in her chest and buttocks area. That would basically be the sum and substance of the case, Your Honor. He then drove her home at like 4:30 or 5:00 in the morning and her mother became aware of this, she told her mother what happened, and she reported it immediately to the police.

3

State Court Record, Sentencing Transcript, Oct. 15, 2001 at p. 31. The Court takes judicial notice of the fact that these events were alleged to have taken place on September 5, 1999.[2]

After filing a direct appeal and a petition for allowance of appeal from the judgment of conviction in the LaTavia case, petitioner eventually filed a PCRA petition, was permitted to represent himself during the PCRA proceedings and filed an appeal to the Superior Court and a petition for allowance of appeal. Thereafter, Petitioner filed the instant habeas petition. Dkt. [4]. In that habeas petition, he raised the following issues:

> [1. Trial Counsel was ineffective when she] elicited prejudicial testimony from [the] Commonwealth's chief witness [i.e., LaTavia].

Dkt. [4] at 8 (capitalization altered without indication).

> [2. Trial Counsel was ineffective when she] failed to object to [the] Prosecutor's improper closing argument or request a mistrial.

Dkt. [4] at 11 (capitalization altered without indication).

> [3. Trial Counsel was ineffective when she] failed to object to [the] admissibility of expert testimony [provided by Dr. Davis].

Dkt. [4] at 17 (capitalization altered without indication).

> [4. The] cumulative effect of trial counsel's errors [prejudiced Petitioner].

Dkt. [4] at 20 (capitalization altered without indication).

---

[2] See page 2 of the docket in Commonwealth v. Octavius Settles, No. CP-02-CR-0014296-1999 (Allegheny County CCP), which docket is available at

http://ujsportal.pacourts.us/PublicReporting/PublicReporting.aspx?rt=1&&ct=4&dkt=79881165&arch=0&ST=6/19/2008%203:45:53%20PM

(Site last visited June 19, 2008).

Less than two months after initiating this case, Petitioner filed an amended habeas petition, Dkt. [6], in which he raised a claim of newly discovered evidence of his actual innocence. He alleged that Latavia, on April 6, 2007, executed a notarized statement recanting her trial testimony.

The Respondents filed an answer, denying that Petitioner was entitled to any relief. Dkt. [14]. The Respondents also caused to be delivered to this court the original State Court records. Petitioner filed a traverse. Dkt. [16].

**B. AEDPA is applicable**

The Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, tit. I, §101 (1996) (AEDPA), which amended the standards for reviewing State court judgments in federal habeas petitions filed under 28 U.S.C. § 2254, was effective April 24, 1996. Because petitioner's habeas petition was filed in the year 2007, AEDPA is applicable to this case. Werts v. Vaughn, 228 F.3d 178, 195 (3d Cir. 2000).

Where the State courts have reviewed a federal issue presented to them and disposed of the issue on the merits, and that issue is also raised in a federal habeas petition, AEDPA provides the applicable deferential standards by which the federal habeas court is to review the State courts' disposition of that issue. See 28 U.S.C.§ 2254(d) and (e).

In Williams v. Taylor, 529 U.S. 362 (2000), the Supreme Court has expounded upon the standard found in 28 U.S.C. § 2254(d). In Williams, the Court explained that Congress intended that habeas relief for errors of law may only be granted in two situations: (1) where the State court decision was "contrary to . . . clearly established Federal law as determined by the Supreme Court of the United States" or (2) where that State court decision "involved an unreasonable application of[] clearly established Federal law as determined by the Supreme Court of the

United States." Id. at 404-05 (emphasis deleted).  The Court explained the two situations in the following terms:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

Williams, 529 U.S. at 412-13.  The Court of Appeals for the Third Circuit has also elucidated the "contrary to" clause by noting that "it is not sufficient for the petitioner to show merely that his interpretation of Supreme Court precedent is more plausible than the state court's; rather, the petitioner must demonstrate that Supreme Court precedent requires the contrary outcome." Werts v. Vaughn, 228 F.3d at 197 (quoting Matteo v. Superintendent, SCI-Albion, 171 F.3d 877, 888 (3d Cir. 1999)(en banc)).  Moreover, it is Petitioner's burden to prove the State court decision is either contrary to or an unreasonable application of clearly established federal law. See Matteo, 171 F.3d at 888; Werts v. Vaughn, 228 F.3d at 197.[3]

### C. Discussion

#### 1. Ineffective Assistance of Counsel

Most of Petitioner's issues involve claims of ineffective assistance of counsel.  Hence, we turn initially to the standards for ineffectiveness.

---

[3]  AEDPA also permits federal habeas relief where the State court's adjudication of the claim "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. 2254(d)(2).  It does not appear that Petitioner properly casts his arguments in terms of an unreasonable determination of the facts.  However, to the extent that he would, the Court concludes that none of the factual determinations of the State courts is unreasonable.

In Strickland v. Washington, 466 U.S. 668 (1984), the Supreme Court explained that there are two components to demonstrating a violation of the right to effective assistance of counsel. First, the defendant must show that counsel's performance was deficient. This requires showing that "counsel's representation fell below an objective standard of reasonableness." Id. at 688; see also Williams v. Taylor, 529 U.S. at 390-91. In reviewing counsel's actions, the Court presumes that counsel was effective. Woods v. McBride, 430 F.3d 813, 821 (7th Cir. 2005)("We view counsel's performance deferentially, with the understanding that there is a great deal of room for disagreement among reasonable attorneys as to the appropriate strategy or tactics to employ in the course of representation, so we indulge the 'strong presumption that counsel rendered reasonably effective assistance.'")

Because the Strickland test is one of objective reasonableness, it does not matter if counsel actually considered the course taken or foregone to determine whether the actions or omissions were objectively reasonable; so long as a hypothetical reasonable attorney could have done the same, there is no ineffectiveness. Chandler v. United States, 218 F.3d 1305, 1316 n.16 (11th Cir. 2000). In light of the strong presumption of counsel's effectiveness and the objective reasonableness standard, the Court of Appeals for the Third Circuit has explained, "[i]t is [] only the rare claim of ineffective assistance of counsel that should succeed under the properly deferential standard to be applied in scrutinizing counsel's performance." United States v. Kauffman, 109 F.3d 186, 190 (3d Cir. 1997)(quoting United States v. Gray, 878 F.2d 702, 711 (3d Cir. 1989)).

Second, under Strickland, the defendant must show that he was prejudiced by the deficient performance. "This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Strickland, 466 U.S. at 687. To

establish prejudice, the defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694; see also Williams, 529 U.S. at 391. In addition, in undertaking a prejudice analysis, the Court properly considers the strength of the evidence against the defendant because "... a verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support." Buehl v. Vaughn, 166 F.3d 163, 172 (3d Cir. 1999). The Strickland test is conjunctive and a habeas petitioner must establish both the deficiency in performance prong and the prejudice prong. See Strickland, 466 U.S. at 687; Dooley v. Petsock, 816 F.2d 885, 889 (3d Cir. 1987). As a result, if a petitioner fails on either prong, he loses. Holladay v. Haley, 209 F.3d 1243, 1248 (11th Cir. 2000); Foster v. Ward, 182 F.3d 1177, 1184 (10th Cir. 1999).

The first four issues Petitioner raises in this habeas petition are issues of ineffectiveness of counsel (the fourth, being cumulative effect of counsels' errors). The first three of these ineffective assistance of counsel claims were directly addressed on the merits by the State courts. In disposing of these ineffective assistance claims, the State courts relied upon the test definitively announced in Commonwealth v. Pierce, 527 A.2d 973 (Pa. 1987). Dkt. [14-11] at 43.[4] The Pennsylvania Supreme Court has developed an ineffective assistance standard that requires a petitioner to demonstrate that (1) the underlying claim is of arguable merit, (2) counsel had no reasonable basis for the act or omission in question, and (3) but for counsel's act or omission, it is reasonably probable that the outcome of the proceedings would have been

---

[4] The PCRA Superior Court opinion cited to Commonwealth v. Chimel, 889 A.2d 501, 540 (2005), which explicitly cited to Commonwealth v. Pierce.

different.  Commonwealth v. Pierce, 527 A.2d at 975.  See also Commonwealth v. Douglas, 645 A.2d 226, 230-31 (Pa. 1994).  This standard has been found to be materially identical to the test enunciated in Strickland.  See Werts, 228 F.3d at 203.  The Third Circuit Court has ruled that this standard is not "contrary to" Strickland, in the first sense of contrary to, i.e., applying a wrong rule of law,[5] and therefore, "the appropriate inquiry is whether the Pennsylvania courts' application of Strickland to [petitioner's] ineffectiveness claim was objectively unreasonable, i.e., the State court decision, evaluated objectively and on the merits, resulted in an outcome that cannot reasonably be justified under Strickland."  Werts, 228 F.3d at 204.  Because the State courts decided Petitioner's claims of ineffective assistance of counsel under the standards of Pierce and Chimel and those standards are the same as the Strickland standard, and because Petitioner has not cited any extant United States Supreme Court precedent that is factually similar to this case but that was decided differently than the State courts decided Petitioner's case, this Court is required to apply the deferential standard of 28 U.S.C. § 2254(d), which demands that a habeas petitioner demonstrate that the State court's adjudication of the federal claim was an unreasonable application of then extant United States Supreme Court precedent.

Petitioner has failed to carry his burden to do so.   Technically, Petitioner should actually be bringing layered ineffective assistance of counsel claims because the claims of Petitioner's trial counsel's alleged ineffectiveness were not raised by his subsequent counsel.  In the Superior Court, Petitioner brought his claims as layered claims and this is how the Superior Court

---

[5]  Of course, it would remain open to Petitioner to show that the State Courts' adjudication of his claim was contrary to United States Supreme Court precedent in the second sense of "contrary to," i.e., demonstrating the existence of a Supreme Court case that was factually indistinguishable from the State Court case, yet the State Court decided it differently from the Supreme Court. Petitioner has not done so in this case however.  The Court in Strickland denied relief, the State Courts here as well denied relief on all of the issues of ineffectiveness which Petitioner raises in the habeas petition.

addressed Petitioner's claims. Petitioner does raise the present claims as layered claims of ineffectiveness. Dkt. [4] at 21 to 22.

Petitioner's first issue of ineffectiveness is that trial counsel was ineffective when she elicited prejudicial testimony from LaTavia. The factual basis for this claim arises from the following cross examination of LaTavia by Petitioner's trial counsel:

> Q.     Okay. When was the first time that  – the first time that your Uncle Octavius supposedly did these things to you, what home were you living at?
>
> A.  I don't know.
>
> Q.  You don't remember where you were living at the time?
>
> A.  No.
>
> Q.  Okay.  Now, do you remember what grade you were in?
>
> A.  No.
>
> Q.  Okay.  Do you remember what school you were going to?
>
> A.  I know I was going to no school.  He told me he did it when I was a baby.

(T.T. at 91-92).  See also Dkt. [4] at 9 (quoting the above exchange).

Petitioner insists that trial counsel was ineffective for eliciting the last answer because it indicated that Petitioner may have done something to LaTavia when she was a baby.  The Superior Court addressed this issue as follows:

> Appellant's final preserved and cognizable issue is whether trial counsel was ineffective for having elicited testimony regarding prior sexual assaults upon the victim by Appellant.  Appellant maintains that the victim's testimony that Appellant told her that the first time he had abused her was when she was a baby warrants a conclusion that trial counsel's cross-examination of the victim was of substandard quality.  Assuming arguendo that the testimony elicited could be considered to have been inadmissible, we determine nevertheless that trial counsel had a reasonable basis for questioning the victim in the manner in which she did.  Counsel sought to demonstrate that the victim was unable to provide a specific time frame within which the alleged sexual abuse had occurred.  This was part of

the defense strategy to convince the jury that the victim's lack of specificity reflected negatively on her credibility.  As this strategy was designed to further Appellant's interest, counsel's actions had a reasonable basis.  Because Appellant has failed to demonstrate that trial counsel was ineffective in her questioning of the victim, no relief on appeal is warranted.  Further, there is no reasonable probability that but for the elicitation of this testimony, the outcome of the trial would have been different.

Dkt. [14-11] at 51 to 52 (citations omitted).  Petitioner has not carried his burden to demonstrate that this disposition is an unreasonable application of then extant United States Supreme Court precedent.  Indeed, trial counsel's questioning of LaTavia, for the purpose of showing her lack of ability to recall time frames, to cast doubt on her credibility was, as the Superior Court held, a reasonable trial strategy.  Merely because LaTavia answered a question with an answer that was unexpected and somewhat unresponsive to the question, does not render trial counsel ineffective.  See, e.g., Styers v. Schriro, No. CV-98-2244,  2007 WL 86944, at *17-*18 (D.Ariz. Jan. 10, 2007), wherein, the Court confronted with a similar claim as raised by Petitioner herein, reasoned as follows:

> To withstand scrutiny under *Strickland*, "counsel's representation must be only objectively reasonable, not flawless or to the highest degree of skill." *Dows v. Wood*, 211 F.3d at 487 (*citing Strickland*, 466 U.S. at 688-89). Tactical decisions made during trial, such as those Petitioner's counsel made with respect to the questioning of Ms. Pickinpaugh, "are given great deference." Id. For example, in *Phyle v. Leapley*, 66 F.3d 154, 159 (8th Cir. 1995), the Eighth Circuit rejected the habeas petitioner's claim that trial counsel was ineffective based on his failure to object to testimony by the key prosecution witness regarding prior violent acts by the petitioner. Applying the "presumption that counsel's conduct falls within the wide range of reasonable professional assistance," *Strickland*, 466 U.S. at 689, the Court of Appeals emphasized that trial tactics with respect to the questioning of witnesses are entitled to special deference:

>> trial lawyers must take into account [broad, highly subjective factors] as they make repeated, instantaneous decisions whether to object to a question, whether to move to strike a damaging unresponsive answer, or whether to move for a mistrial when a witness has delivered an unexpected low blow. When we review such trial decisions, the ineffective assistance standard is high-they are "virtually unchallengeable"-in part because appellate judges

> cannot recreate from a cold transcript the courtroom dynamics that
> are an essential part of evaluating the effectiveness of counsel's
> performance. See 2 Wayne R. LaFave & Jerold H. Israel, Criminal
> Procedure § 11.10, at 95 (1984).

*Phyle*, 66 F.3d at 159.

> Applying the standard of deference mandated by *Strickland*, the Court
> finds that counsel was not ineffective in his handling of Ms. Pickinpaugh's
> testimony on cross-examination. He attempted, with some success, to elicit
> positive testimony from a State witness. The fact that counsel's tactics also elicited
> damaging testimony does not amount to constitutionally ineffective assistance of
> counsel.

The foregoing analysis applies with equal force here. Hence, this issue affords Petitioner no relief.

As to Petitioner's second issue of trial counsel's alleged ineffectiveness for failing to object to the prosecutor's closing remarks and/or move for a mistrial, the Superior Court addressed this issue on the merits. The Superior Court addressed this issue in its opinion at Dkt. [14-11] at 47 to 49. Essentially, the Superior Court found that the prosecutor's closing remarks were not objectionable and, therefore, trial counsel was not ineffective for failing to object to unobjectionable remarks. The Superior Court declared that

> We have examined the prosecutor's closing argument in its entirety as we
> must, and conclude that the prosecutor did not engage in conduct which would
> warrant a mistrial. The prosecutor's arguments were based upon the evidence
> introduced at trial, and presented the Commonwealth's case in a permissibly
> forceful manner. Nothing said by the prosecutor in closing would support a
> conclusion that she deliberately attempted to destroy the objectivity of the fact-
> finder such that the unavoidable effect of her comments would be to create such
> bias and hostility toward Appellant that the jury could not enter a true verdict. We
> further conclude that the trial court's instructions to the jury were adequate to
> ensure that the jury rendered a true verdict free of bias or hostility against
> Appellant. Therefore, we determine that this issue affords no basis upon which to
> grant relief.

Dkt. [14-11] at 49. Essentially, the reasoning of the Superior Court is that because there was no merit to trial counsel raising an objection or seeking a mistrial based on the prosecutor's

unobjectionable closing remarks, trial counsel cannot be ineffective. This is simply not an

unreasonable application of Strickland. Werts v. Vaughn, 228 F.3d 178, 203 (3d Cir. 2000)

("counsel cannot be ineffective for failing to raise a meritless claim.").

As to Petitioner's third issue, he claims that trial counsel was ineffective when she failed

to object to the admissibility of expert testimony provided by Dr. Davis. Petitioner complains

that the "testimony given by Dr. Davis denied Settles his due process rights to a fair trial as it was

irrelevant, unreliable and contradictory where, the doctor could not testify as to what kind of

'foreign object' penetrated the Commonwealth's chief witness' vagina, opened the door to an

inference of prior bad acts and erroneously classified a penis as a 'foreign object.'" Dkt. [4] at 17.

The Superior Court addressed this issue as follows:

> Appellant's next issue presented is whether trial counsel was ineffective
> for having failed to object to the evidence presented by Commonwealth witness
> Dr. Holly W. Davis. Appellant argues that Dr. Davis's testimony did not prove
> that appellant was to blame for the victim's vaginal injury nor did it prove that
> Appellant had sexual intercourse with the victim. (Appellant's brief at 33).
> Appellant maintains that because Dr. Davis's testimony alone did not establish
> Appellant's guilt, the testimony should have been excluded.
> Appellant's argument misapprehends the test for determining the
> relevancy of evidence. Any evidence that has a tendency to make the existence of
> any fact that is of consequence either more probable or less probable is considered
> relevant. As we quoted in our previous memorandum opinion, Dr. Davis's
> testimony corroborated that of the victim and established that the victim had
> suffered injuries to her genitals that were not consistent with accidental trauma.
> This testimony was relevant because it tended to make more probable than not
> that the victim had been subjected to sexual abuse. It was not necessary for the
> Commonwealth to seek to prove its entire case through the testimony of Dr. Davis
> in order for the testimony to be considered relevant. Therefore, this issue is
> likewise without merit.

Dkt. [14-11] at 49 to 50 (citations omitted). Petitioner again fails to demonstrate that the

Superior Court's disposition of this claim was an unreasonable application of Strickland. The

Superior Court again found that trial counsel was not ineffective for failing to object to Dr.

Davis's testimony because there was no ground upon which to object.

Petitioner complains that the Superior Court misapprehended his argument. Petitioner contends that the "Superior Court held that Settles maintains that Dr. Davis' testimony alone did not establish his guilt. This is not what Settles was arguing. Settles simply argues that Dr. Davis' testimony only invites speculation and conjecture." Dkt. [4] at 17 n.3. This Court concludes that the Superior Court's characterization of Petitioner's argument is not incorrect. If one reads the arguments Petitioner raised in his brief to the Superior Court, Dkt. [14-8] at 41, it is a fair characterization that Petitioner was arguing that Dr. Davis's testimony did not establish his guilt. For example, Petitioner argued that because Dr. Davis testified that the victim's vagina was penetrated with a foreign object, but was unable to say what that object was, or when that penetration occurred, then such "testimony does not in any way assist the jury in determining whether Settles is the cause of the injury to Latavia's vagina, but would only cause the jury to speculate that he is." Dkt. [14-8] at 41.

Nevertheless, even if this Court were to review this issue *de novo*, this Court would agree with the Superior Court's conclusion that there was no basis upon which Petitioner's trial counsel could properly object to the testimony of Dr. Davis. Even more properly to the point, because this issue is now really only cognizable as an issue of appellate counsel's failure to raise on direct appeal this issue of trial counsel's ineffectiveness, and because, this Court concludes that the issues raised on direct appeal were stronger than this issue, appellate counsel could not have been ineffective for failing to raise this particular claim of trial counsel's ineffectiveness.

It is well established that "[t]he Constitution does not require appellate counsel to raise every nonfrivolous ground that might be pressed on appeal." Ellis v. Lynaugh, 873 F.2d 830, 840 (5th Cir. 1989) (citing Jones v. Barnes, 463 U.S. 745, 751 (1983)). Accord Sistrunk v. Vaughn, 96 F.3d 666, 670 (3d Cir. 1996)("In particular, it is a well established principle that

counsel decides which issues to pursue on appeal, and there is no duty to raise every possible claim.") (citations omitted).

As counsel is presumed effective, Strickland v. Washington, 466 U.S. at 689, the Court presumes that Petitioner's appellate counsel in the exercise of her professional judgment deemed the other issues which she did raise on appeal to be stronger issues and decided not to raise the weaker issues Petitioner recounts above.   Petitioner has not rebutted this presumption and indeed, on this record, in this Court's judgment, appellate counsel was correct that the issues she raised were much stronger than the issues Petitioner recounts above.   Carter v. Bowersox, 265 F.3d 705, 716 (8th Cir. 2001) (noting "that an attorney can limit the appeal to those issues which he determines to have the highest likelihood of success" and referring to a "presumption that counsel's failure to raise the due process claim was a tactical decision"); Bell v. Jarvis, 236 F.3d 149, 164 (4th Cir. 2000)("In applying this [Strickland] test to claims of ineffective assistance of counsel on appeal, however, reviewing courts must accord appellate counsel the 'presumption that he decided which issues were most likely to afford relief on appeal.'").   Accordingly, Petitioner fails to show that appellate counsel acted unreasonably in choosing to raise the issues she raised on direct appeal and foregoing the issues Petitioner recounts above.

This is all the more true when one considers that one of the issues raised on appeal, namely, that the trial court abused its discretion in sentencing Petitioner to 22 ½ to 45 years in prison, got the attention of the Superior Court, which vacated the sentence and remanded for new sentencing.  Upon being resentenced to an aggregate of 15 years and 8 months to 30 years and 6 months,  Petitioner received a decrease in his minimum sentence of 7 ½ years and a decrease in his maximum sentence of roughly 15 years, a reduction of the total sentence by about 33%. Accordingly, in light of the strong issues that appellate counsel did raise, one of which afforded

Petitioner some relief, Petitioner failed to carry his burden to show entitlement to relief on this claim of ineffectiveness.

The fourth issue raised is that the cumulative errors of counsel prejudiced Petitioner even if those errors considered individually did not. Dkt. [4] at 20 to 22. However, Petitioner failed to establish on this record that any of the claimed errors of counsel were, in fact, errors. Because he has failed to establish errors, he cannot meet his burden to establish what is required under a cumulative error analysis. There simply are no errors of counsel established so as to cumulate them. See U.S. v. Marceau, 133 F.3d 930 (Table), 1997 WL 800791, *6 (9th Cir. 1997)("In determining whether cumulative errors require reversal, the Court reviews all errors preserved for appeal to determine if prejudice exists. We find no error, and no prejudice if any error there was.") (footnote omitted). Accordingly, these first four issues do not merit relief.

## 2. Claim of Actual Innocence

In his amended supplemental habeas petition dated July 30, 2007, Petitioner alleges the discovery of new evidence of his actual innocence. Namely, he asserts that LaTavia executed a sworn notarized statement on April 6, 2007, in which she recants her testimony that Petitioner sexually abused her.

The Respondents point out that Petitioner was required to bring this claim of new evidence of innocence to the State courts by filing a second PCRA petition within 60 days of discovering the new evidence. Because he failed to do so, Respondents maintain that he has procedurally defaulted this claim of actual innocence. Dkt. [14] at 12. Petitioner counters that this evidence of his actual innocence overcomes the procedural default because to not entertain his procedurally defaulted claim of actual innocence would result in a complete miscarriage of justice. Dkt. [6] at 9.

Petitioner is confused about two independent types of actual innocence claims. One is a gateway claim and the second is a freestanding claim. Typically, when one makes an actual innocence claim, it is a "gateway" claim, wherein a habeas petitioner contends that because there is new evidence of his actual innocence the Court should overlook his procedural default of other independent claims. If the petitioner meets the requirements under this gateway actual innocence test, then the Court may review those other independent claims that were procedurally defaulted and address them on the merits and grant relief on those claims if appropriate. But in doing so, the Court is granting relief on those other independent procedurally defaulted claims; the Court is not granting relief simply on the basis that the person is actually innocent.

In contrast, the freestanding claim argues that quite apart from any issues that were procedurally defaulted, the Court should grant the petitioner relief because he is actually innocent of the crimes he was convicted of.

We will first take up Petitioner's argument that if we fail to consider his procedurally defaulted claim of actual innocence, such would result in a miscarriage of justice and so, we should consider his actual innocence claim on the merits; this is a gateway claim of actual innocence.

The phrase "miscarriage of justice" has been explained by the Supreme Court to require a showing that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." Schlup v. Delo, 513 U.S. 298, 327 (1995);[6] United States v. Sorrells, 145

---

[6] The Supreme Court in Schlup explained that an actual innocence claim in the context of seeking to have a procedural default "forgiven" so as to have the procedurally defaulted claims reviewed on the merits is a "gateway" claim. In other words, the claim of actual innocence in the Schlup context is **not** a claim that because I am actually innocent by virtue of that fact alone I am entitled to federal habeas relief but, rather, is a claim that contends because I am actually innocent, the court should forgive my procedural default in the State courts and consider my procedurally defaulted claims on their merits. Schlup, 513 U.S. at 315. The Court in Schlup contrasted such a "gateway" claim to a "freestanding"

F.3d 744, 749 n.3 (5th Cir. 1998)("The 'actually innocent' standard is the same as the 'fundamental miscarriage of justice' standard, which applies 'when a constitutional violation probably has caused the conviction of one innocent of the crime.'").  Moreover, "actually innocent" means factual innocence and not just legal innocence.  See Calderon v. Thompson, 523 U.S. 538, 559 (1998)("[T]he miscarriage of justice exception is concerned with actual as compared to legal innocence.").  Because of the focus being on establishing actual innocence as opposed to legal innocence, the Court is not bound to consider only the evidence introduced at a habeas petitioner's criminal trial.  See Schlup v. Delo, 513 U.S. at 327 - 28, wherein the court held that "[i]n assessing the adequacy of petitioner's showing [of actual innocence], therefore, the district court is not bound by the rules of admissibility that would govern at trial.  Instead, the emphasis on 'actual innocence' allows the reviewing [habeas] tribunal also to consider the probative force of relevant evidence that was either excluded or unavailable at trial."  Indeed, the Supreme Court explained more fully what it meant by allowing a court to consider evidence not heard at trial when it declared that "[t]he habeas court must make its determination concerning the petitioner's innocence 'in light of all the evidence, including that alleged to have been illegally admitted (but with due regard to any unreliability of it) and evidence tenably claimed to have been wrongly excluded or to have become available only after the trial.'"  Id. at 328.

In order to make a showing of "actual innocence," a petitioner "must satisfy a two-part test in order to obtain review of otherwise procedurally barred claims.  First, the petitioner's allegations of constitutional error must be supported with new reliable evidence not available at trial.  *Schlup*, 513 U.S. at 327-28."  Amrine v. Bowersox, 238 F.3d 1023, 1029 (8th Cir. 2001).

---

claim of actual innocence such as raised in Herrera v. Collins, 506 U.S. 390 (1993), wherein the claim was precisely, because I am actually innocent, by virtue of that fact alone, I am entitled to federal habeas relief.

Second, the petitioner must establish "that it is more likely than not that no reasonable juror would have convicted him in light of the new evidence." <u>Id</u>. It is not enough that in light of the new evidence a reasonable doubt may exist as to the Petitioner's guilt, the test is even more onerous than that. In <u>Schlup</u>, the Supreme Court reiterated that "[t]he meaning of actual innocence as formulated by *Sawyer* and *Carrier* does not merely require a showing that a reasonable doubt exists in the light of the new evidence, but rather that no reasonable juror would have found the defendant guilty." <u>Schlup</u>, 513 U.S. at 329.

### a. Petitioner has not established the existence of any "new" evidence

The first prong of the two part test, i.e., whether the proffered evidence is new, provides that "evidence is new only if it was not available at trial and could not have been discovered earlier through the exercise of due diligence." <u>Amrine v. Bowersox</u>, 238 F.3d at 1028. Petitioner's claim of actual innocence flounders on this ground in addition to floundering on the second prong as well.

Petitioner points to nor offers to provide any new evidence that was not available to him at the time of the trial or shortly thereafter. While the form of the evidence Petitioner points to is new, i.e., the affidavit of LaTavia, the fact of her alleged recantation does not constitute new evidence. In fact, the State court record is replete with references to LaTavia recanting. For example, in a post conviction relief act petition prepared pro se by Petitioner, he argued "[t]he Petitioner is entitled to a recantation hearing and a new trial or discharge for Danielle Green and the victim LaTavia Michael has [sic] recanted their testimony they had given at trial." Dkt. [14-6] at 11, ¶ 11. It is unclear exactly when this pro se PCRA petition was prepared or when Petitioner learned of the alleged recantation. In addition, in the State court record, there is a letter from Petitioner's appointed PCRA counsel, J. Richard Narvin, who wrote to Petitioner that "[i]f

your niece would, in fact, recant before the trial court then I believe that would be substantially helpful." Dkt. [14-6] at 14. This letter was written on January 29, 2003. In fact, a private investigator hired on Petitioner's behalf, interviewed a Laodicea Roberts, who apparently was another half sister of LaTavia's, who reported to the investigator that during the trial she and LaTavia were in a bathroom together in the Courthouse and that when Laodicea asked LaTavia if Petitioner ever touched her in an inappropriate way, LaTavia allegedly answered no, and when asked by Laodicea why she lied, LaTavia said that people were giving her suff. Dkt. [14-6] at 18 to 19. Thus, it is abundantly clear that evidence of LaTavia's alleged recantation was available at the time of trial. Moreover, Petitioner discovered this evidence sometime before January 29, 2003. Furthermore, Petitioner has failed to demonstrate that he could not have discovered this evidence during or shortly after the trial with reasonable diligence. Finally, as the Respondents note, "[a]lthough Petitioner did raise a recantation claim in his PCRA, he failed to pursue the issue on appeal. This is particularly noteworthy, since petitioner represented himself, pro se, on appeal and was in complete control of the issues raised." Dkt. [14] at 10. Petitioner utterly failed to carry his burden to show that there is any "new" evidence within the contemplation of the miscarriage of justice doctrine so as to come within this exception. See Amrine. Because the actual innocence test is conjunctive and Petitioner must show both "new" evidence and that no reasonable juror would have convicted him in light of this new evidence, Petitioner's claim falls on this ground alone.

Moreover, the recantation evidence also fails the second prong as well, i.e., Petitioner has failed to convince the Court that in light of the alleged recantation, given the other evidence on this record, that no reasonable juror would have convicted him. There is the evidence of the other children who saw Petitioner and LaTavia in bed together, the testimony of the baby sitter,

seeing Petitioner nude with LaTavia on the bed, and the medical evidence of Dr. Holly that LaTavia had been sexually abused or penetrated with a foreign object.  In light of this and other evidence, Petitioner has not carried his burden to establish his actual innocence.  It is not enough that in light of the new evidence a reasonable doubt may exist as to the Petitioner's guilt, the test is even more onerous than that.  In <u>Schlup</u>, the Supreme Court reiterated that "[t]he meaning of actual innocence as formulated by *Sawyer* and *Carrier* does not merely require a showing that a reasonable doubt exists in the light of the new evidence, but rather that no reasonable juror would have found the defendant guilty."  <u>Schlup</u>, 513 U.S. at 329.  Having failed to carry his burden to show a miscarriage of justice, Petitioner has not shown that despite his procedural default of his actual innocence claim, this Court should entertain it.  Thus, Petitioner has failed to establish his entitlement to pass through the gateway of <u>Schlup</u>.

Notwithstanding the foregoing, it seems to the Court that Petitioner really is making not so much a gateway claim of actual innocence  as much as he is making a freestanding claim of actual innocence.

To the extent that Petitioner is making a free standing actual innocence claim, i.e., claiming that his actual innocence is itself a ground for habeas relief, i.e., it violates the constitution to punish an innocent person even if there were no constitutional errors committed, à la <u>Herrera v. Collins</u>, 506 U.S. 390 (1993), the Court is unpersuaded.   The Court's conclusion above that Petitioner did not meet the lesser "actual innocence" standard under <u>Schlup v. Delo</u>, resolves this freestanding claim under the more stringent actual innocence standard of <u>Herrera</u>. <u>See</u> <u>Schlup v. Delo</u>, 513 U.S. at 316-317; <u>Thomas v. Taylor</u>, 170 F.3d 466, 473 (4th Cir. 1999)("Regardless of whether we apply the more lenient standard of *Schlup* or the stricter standard of *Herrera* . . ."); <u>Sistrunk v. Armenakis</u>,  292 F.3d 669 (9th Cir. 2002) (referencing the

"more stringent *Herrera* standard").   Accordingly, this issue of alleged new evidence does not merit relief as a freestanding claim either.

Accordingly, this petition should be dismissed.

### D.     Certificate of Appealability

A certificate of appealability, which is a prerequisite for allowing an appeal to a Court of Appeals, should not be issued unless the petitioner "has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253 (c)(2).  A "substantial showing" requires a habeas petitioner to show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right[.]"  Slack v. McDaniel, 529 U.S. 473, 484 (2000).  See also Walker v. Government of The Virgin Island, 230 F.3d 82, 89-90 (3d Cir. 2000).

Applying this standard to the instant case, the Court concludes that jurists of reason would not find it debatable whether the petition states a valid claim of the denial of a constitutional right.  Accordingly, a certificate of appealability should be denied.

III.    CONCLUSION

In accordance with the Magistrates Act, 28 U.S.C. § 636(b)(1)(B) & (C), and Local Rule 72.1.4 B, the parties are permitted to file written objections by July 14, 2008 and responses are due seven (7) days thereafter in accordance with the schedule established in the docket entry reflecting the filing of this Report and Recommendation.  Failure to timely file objections may constitute waiver of any appellate rights.


Respectfully submitted,

*/s/  Amy Reynolds Hay*
United States Magistrate Judge

Dated: 26 June, 2008


cc:     The Honorable Donetta W. Ambrose
        Chief United States District Judge

        Octavius Settles
        EU-5894
        SCI Albion
        10745 Route 18
        Albion, PA 16475-0002

        Rusheen R. Pettit
        Assistant District Attorney
        by Notice of Electronic Filing